UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| S.D.S. LUMBER CO.,<br><br>                Petitioner,<br><br>    v.<br><br>KEVIN GREGORY, et al.,<br><br>                Claimants. | CASE NO. C20-5767 MJP<br><br>ORDER DENYING CLAIMANTS' MOTION TO DISMISS;<br><br>GRANTING PETITIONER'S MOTION FOR PARTIAL SUMMARY JUDGMENT |

      This matter comes before the Court upon Claimants' Motion to Dismiss the Amended Complaint (Dkt. No. 37) and Petitioner's Cross-Motion for Partial Summary Judgment (Dkt. No. 42). Having read the Motion, Cross-Motion and Response (Dkt. No. 42), Replies (Dkt. Nos. 51, 54), and all related papers, the Court DENIES Claimants' Motion to Dismiss and GRANTS Petitioner's Motion for Partial Summary Judgment.

**Background**

      At 7:40 am on March 21, 2018, Petitioner S.D.S. Lumber Company's tugboat, the DAUBY, was navigating downriver in the main shipping channel of the Columbia River while

towing two barges, one empty and one filled with wood chips. (Dkt. No. 30 ("FAC") at 2.) The fog was heavy through the channel. (Id.) As the DAUBY approached Willow Grove Park, Claimants Kevin and Jacob Gregory were crossing the channel in a 20-foot recreational vessel when its main outboard engine died. (Id.) The Gregorys were unable to restart the engine and the DAUBY's captain and crew did not see them. (Id.) The DAUBY hit the Claimants' boat and they were thrown into the river. (Id.) The DAUBY's captain and crew continued, unaware of the collision and the Claimants in the water. (Id.) The Claimants were rescued by nearby good Samaritans. (Id.)

1. Extent of the Damages

An ambulance arrived to treat the Claimants but Kevin Gregory told the paramedics that he and his son were both "fine," and they did not receive treatment. (Dkt. No. 43, Declaration of Matthew C. Crane ("Crane Decl."), Ex. 1 at 3.) Claimants contend they drove home to get dry clothes and then went to the hospital, but have not produced medical records, medical provider information, or any treatment information. (Id. at 2.) When the superintendent of Petitioner's marine division learned about the collision later in the day on March 21, he understood that there was no injury report. (Dkt. No. 44, Declaration of Gary Collins ("Collins Decl."), ¶ 2.)

On June 1, 2020, Claimants filed a lawsuit in Cowlitz County Superior Court against Petitioner. Gregory v. S.D.S. Lumber Co. and Gorge Leasing Co., Cause No. 20-2-00392-08. Claimants have disclosed that their damages will be limited to "garden variety" mental anguish, they "are not making claims for diagnosable mental injuries and will present no mental health treatment records or call any mental health professionals." (Crane Decl., Ex. 1 at 2.) Further, "[w]ith regard to physical injuries, Kevin and Jacob Gregory will present no medical records or call any medical providers . . . [they] do not make claims for past or future wage loss or loss of

wage-earning capacity. There is no claim for future medical bills." (Id.) But Claimants hope to recover punitive damages, and in a letter to Petitioner sent May 5, 2020, Claimants valued their claims at $2,900,000. (FAC at 3; Dkt. No. 43, Declaration of Matthew C. Crane, ¶ 2.)

On July 30, 2020 Petitioner filed this action under the Limitation of Liability Act, which limits the liability of an owner of any vessel for any claim, debt, or liability to the value of the vessel and pending freight. 46 U.S.C. §§ 30501–30512. After the collision, the DAUBY had a value of $1,725,000 and the value of the pending freight was $12,945.80, totaling $1,737,945.80. (Id.) Claimants now move to dismiss, arguing that Petitioner filed this action more than six months after receiving written notice of the Gregorys' claims, and therefore outside the statute of limitations. (Dkt. No. 37.)

2. The Communications

The Parties agree that the statute of limitations began running on January 30, 2020, but dispute whether four communications before that date constitute written notice of the claims that started the statute of limitations. The first of these communications was an April 5, 2018 letter Claimants' prior counsel, Richard Davies, sent to Petitioner's president:

> Dear Mr. Spadaro:
>
> Our law firm represents Kevin and Jacob Gregory concerning a collision that occurred on March 21, 2018 between a barge pushed by the tug Dauby and the Gregory's private fishing vessel on the Columbia River in Longview, Washington. We understand that SDS Lumber owns and operates the tug Dauby. Our early investigation indicates that the tug failed to have a proper lookout in heavy fog and failed to use fog signals. The matter is under investigation by the U.S. Coast Guard and the Cowlitz County Sheriff.
>
> Please direct all correspondence regarding this matter to my attention. Both men were injured in the subject incident and remain under doctors' care. If you have any questions, please let me know.

(Dkt. No. 38, Declaration of Nigel T Stacey ("Stacey Decl."), Ex. 6.) A little over a year later, on April 10, 2019, Petitioner received an updated representation letter from Mr. Davies, informing Petitioner that his "law firm no longer represents Jacob Gregory concerning the above-entitled matter. We continue to represent Kevin Greogry [sic]." (Id., Ex. 8.)

On January 27, 2020 Claimants' present counsel called Petitioner's counsel and "discussed [his] firm's representation of Claimants, the United States Coast Guard investigation, the significant number of rules violations committed by Limitation Plaintiff, the potential punitive damage claim against Limitation Plaintiff, and the significant liability facing Limitation Plaintiff." (Stacey Decl., Ex. 8 (Declaration of James P. Jacobsen ("Jacobsen Decl."), ¶ 4.) The following day, January 28, 2020, a paralegal working with Claimant's counsel emailed Petitioner's counsel, reminding him that he spoke the previous day "about this case" and including a Dropbox link to the 195-page United States Coast Guard report on the collision. (Stacey Decl., Ex. 9.) For the reasons discussed below, the Court finds that these communications were insufficient to provide Petitioner with notice of the reasonable possibility of a claim in excess of the value of the DAUBY, $1.7 million.

**Discussion**

I.     **Claimant's Motion to Dismiss**

Claimants bring this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that Petitioner's failure to bring the limitation action within the statute of limitations deprives the Court of subject-matter jurisdiction. (Dkt. No. 37 at 8–9.) But Petitioner contends the statute of limitations is not jurisdictional. (Dkt. No. 42 at 6–8.) The Court agrees with Petitioner.

In 2015 the Supreme Court addressed the "high bar" a litigant must clear "to establish that a statute of limitations is jurisdictional." United States v. Kwai Fun Wong, 575 U.S. 402, 409 (2015). "[P]rocedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much." Id. at 409 (citing Sebelius v. Auburn Reg'l Med. Ctr., 568 U.S. 145, 153 (2013)). "[A]bsent such a clear statement, . . . 'courts should treat the restriction as nonjurisdictional.'" Id. at 409–10 (quoting Auburn Reg'l Med. Ctr., 568 U.S. at 153). "That does not mean 'Congress must incant magic words.'" Id. (quoting Auburn Reg'l Med. Ctr., 568 U.S. at 153). "But traditional tools of statutory construction must plainly show that Congress imbued a procedural bar with jurisdictional consequences." Id. In other words, "Congress must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional." Kwai Fun Wong, 575 U.S. at 410.

Following Kwai Fun Wong, courts that have examined whether the Limitation Act's time bar is jurisdictional have concluded that it is not. See, e.g., Orion Marine Constr., Inc. v. Carroll, 918 F.3d 1323, 1329 (11th Cir. 2019) ("[W]e hold that the provision is an ordinary nonjurisdictional claim-processing rule, and that the district court erred in concluding otherwise."); Matter of Fish N Dive LLC, No. CV 19-00604 LEK-WRP, 2020 WL 6551212, at *5 (D. Haw. Nov. 6, 2020) ("This Court therefore concludes that the six-month period in § 30511(a) is a claims processing rule, not a jurisdictional requirement."); Definitive Marine Survs. Inc. v. Tran, 339 F. Supp. 3d 1292, 1305 (M.D. Fla. 2018) ("[T]he law is nonjurisdictional.").

These courts have noted that the time-bar is within the procedural section—not the substantive sections—of Chapter 305. "The legislative history [of the Act] indicates that Congress, . . . imposed the filing deadline merely to change the 'old rule' that allowed

shipowners to wait to file limitation actions until after fully litigating liability by requiring them to act promptly, not to limit a court's power to decide the action." Tran, 339 F. Supp. 3d at 1306 (internal citations omitted). The Court finds this reasoning persuasive and follows these courts in finding that "[w]ith neither Congress's 'own plain statement' that the law is jurisdictional, nor any binding precedent to the contrary, this Court must 'treat the time bar as a claim-processing rule.'" Id. (quoting Kwai Fun Wong, 575 U.S. at 420).

"Where, you might ask, does that leave us procedurally?" Orion, 918 F.3d at 1330. In similar cases, courts have either dismissed the Rule 12(b)(1) motion without prejudice, see, e.g., Tran, 339 F. Supp. 3d at 1308–09, or have opted to treat a Rule 12(b)(1) motion as a Rule 12(b)(6) motion, which was then converted to a summary judgment motion, see Miller v. Herman, 600 F.3d 726, 731–33 (7th Cir. 2010); accord Orion, 918 F.3d at 1330. Because the Parties here agree that the Court can consider the motion under the summary judgment standard (see Dkt. No. 42 at 7–8; Dkt. No. 51 at 8), and the Court's ruling on Petitioner's Motion for Partial Summary Judgment will address the substance of this issue, the Court declines to convert Claimants' Motion to Dismiss for lack of subject matter jurisdiction into a motion for summary judgment. Claimants' Motion to Dismiss is therefore DENIED.

## II. Petitioner's Partial Motion for Summary Judgment

Petitioner moves for partial summary judgment on Claimants' statute of limitations affirmative defenses, arguing that the 2018 Davies letter, the 2019 Davies letter, and the January 28, 2020 email, even if viewed together, did not provide written notice that there was a reasonable possibility that any claim might exceed $1,737,945.80. (Dkt. No. 42 at 23.) Because the Limitation Act requires "written notice of a claim," 46 U.S.C. § 30511(a), Petitioner argues the January 27, 2020 call between counsel should not be considered at all, (Dkt. No. 42 at 17.).

1       Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating the absence of a genuine issue of fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the nonmovant. Matsuhisa Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

      The Parties agree that the issue of notice is most appropriately analyzed under the Doxsee-McCarthy standard, which "asks whether the notice 'informs the vessel owner of an actual or potential claim . . . which may exceed the value of the vessel . . . and is subject to limitation.'" Matter of Martz, No. 3:20-CV-00152-SLG, 2020 WL 6479161, at *5 (D. Alaska Nov. 3, 2020) (quoting Orion Marine Constr., Inc. v. Carroll, 918 F.3d 1323, 1330 (11th Cir. 2019)); (See Dkt. No. 37 at 10; Dkt. No. 42 at 9.). While the Ninth Circuit has not issued a ruling on the appropriate standard, "The Doxsee-McCarthy test is recognized as the 'modern maritime rule' and has been employed by the Second, Fifth, Seventh, and Eleventh Circuits." In re Las Vegas Boat Harbor, Inc., No. 2:20-CV-01457-JAD-VCF, 2021 WL 1033212, at *3 (D. Nev. Mar. 17, 2021). The Doxsee-McCarthy "standard evokes two inquiries: (1) whether the writing communicates the reasonable possibility of a claim, and (2) whether it communicates the reasonable possibility of damages in excess of the vessel's value." In re The Complaint of RLB Contracting, Inc., 773 F.3d 596, 602 (5th Cir. 2014). The Court addresses each inquiry separately.

**A. Reasonable Possibility of a Claim**

      To begin, the Court finds that the letter from Claimants' counsel on April 5, 2018 communicated the reasonable possibility of a claim, satisfying the first prong of the Doxsee-

McCarthy test.  The letter advised Petitioner that Claimants were represented by a law firm in regards to the collision, the "early investigation indicate[] [] the tug failed to have a proper lookout in heavy fog and failed to use fog signals," and "both men were injured in the subject incident and remain[ed] under doctors' care."  (Stacey Decl., Ex. 6.)

Petitioner argues that the letter fails to state that a claim might be made or request insurance information, but "'[m]agic words' are not required, and the notice must only raise a reasonable possibility of a claim against the vessel owner."  In re Las Vegas Boat Harbor, Inc., No. 2:20-CV-01457-JAD-VCF, 2021 WL 1033212, at *4.  The letter, "coming by way of [Claimants'] attorneys, [which] immediately lend[s] it some formality and import," Matter of Martz, No. 3:20-CV-00152-SLG, 2020 WL 6479161, at *10 (D. Alaska Nov. 3, 2020), goes well beyond a representation letter, including an allegation that Petitioner violated several rules and that Claimants had been injured.  Reading the letter with "common-sense inferences" allows only one conclusion: the existence of a reasonable possibility of a claim against Petitioner.  In re Las Vegas Boat Harbor, Inc., 2021 WL 1033212, at *4 (D. Nev. Mar. 17, 2021).

**B. Damages in Excess of the Vessel's Value**

The next question is whether the letters, read in combination, provide notice that Claimants intended to assert a claim that reasonably might exceed $1,737,945.80, the value of the DAUBY and its cargo.  In asserting that the letters provided notice, Claimants cite to cases where the petitioner was aware of extensive injuries that were clearly greater than the cost of the vessel.  See, e.g., In re The Complaint of RLB Contracting, Inc., 773 F.3d 596, 599 (5th Cir. 2014) (finding that the petitioner was on notice that property damage, personal injuries, and the wrongful death of a child could exceed the $750,000 value of the vessel); Martz, 2020 WL 6479161, at *1 (where the parties agreed that damages from the collision, which included a

fatality, could exceed the $15,000 value of the vessel); Matter of City of Huntington Beach, No. SACV-10-641-JST (RNBx), 2011 WL 13225113, at *5 (C.D. Cal. Apr. 4, 2011) ("Notice of a potential claim by parents for the wrongful death of their eleven-year-old daughter was sufficient to inform Petitioner of the reasonable possibility that a substantial damages claim for negligence or wrongful death in excess of $26,000 would be brought by Claimants.").

Here, however, Claimants are only seeking compensation for "garden variety" mental anguish, "will present no medical records or call any medical providers," "do not make claims for past or future wage loss or loss of wage-earning capacity" or future medical bills (Crane Decl., Ex. 1 at 2–3), and the vessel is worth more than $1.7 million.

The ratio of damages to cost of the vessel is therefore more closely related to the case, In re UFO Chuting of Hawaii, Inc., 233 F. Supp. 2d 1254, 1258 (D. Haw. 2001), where two parasailers' ropes snapped, causing them to fall into the water before being picked up by the boat and returning to parasailing later in the day. Following the accident, the parasailers' attorneys wrote letters to the boat owner stating that one parasailer had "several injuries, including back injuries, from the fall" and another "continues to suffer from the injuries she received in this incident and is incurring substantial medical expenses." Id. at 1255. Because the claimants failed to describe the severity of their injuries, the extent of their treatment, or the pain and suffering they experienced, the court found they had failed to provide notice of claims potentially exceeding $25,508. Id. at 1260. In this case, Claimants provided even less information about the extent of their injuries, stating only that "both men were injured in the subject incident and remain under doctors' care." (Stacey Decl., Ex. 6.) This information is insufficient to provide Petitioner with notice of claims exceeding $1.7 million.

Further, even if the January 28, 2020 email with a Dropbox link to the Coast Guard report provided notice of a claim as Claimants contend, the report itself fails to provide a reasonable possibility of damages in excess of the value of the DAUBY. The report finds that the captain of the DAUBY violated a number of Navigation rules by failing to reduce speed in heavy fog, post a lookout, or use all available means to determine if a risk of collision existed, thereby causing the collision. (Stacey Decl., Ex. 2 at 17.) But the report concludes that these actions "constitute negligence." (Id.) Further, the report notes that although Claimants had a horn with them, they failed to use it when their engine stalled as they crossed the channel, violating Navigation Rule 35, and raising the possibility that a comparative fault analysis will be required. (Id. at 21.)

The Coast Guard report does not include information that suggests a reasonable possibility of a punitive damages award in excess of $1.7 million, where such damages are available under the general maritime law only "for 'conduct which manifests reckless or callous disregard for the rights of others or for conduct which shows gross negligence or actual malice or criminal indifference.'" Churchill v. F/V Fjord, 892 F.2d 763, 772 (9th Cir. 1988) (quoting Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc., 767 F.2d 1379, 1385 (9th Cir. 1985) (citations omitted)).

Because Claimants have limited their damages to "garden variety" emotional distress and have pointed to no evidence of willfulness, recklessness, malice, or gross negligence, the Court finds no genuine dispute that Claimants failed to communicate the reasonable possibility of damages in excess of $1.7 million. Petitioner's Motion for Partial Summary Judgment is GRANTED.

## Conclusion

In sum, the Court:

(1) DENIES Claimants' Motion to Dismiss the Amended Complaint (Dkt. No. 37); and

(2) GRANTS Petitioner's Cross-Motion for Partial Summary Judgment (Dkt. No. 42) on Claimants' statute of limitations affirmative defenses (Dkt. Nos. 35 at 1–4 & 36 at 1–4).

The clerk is ordered to provide copies of this order to all counsel.

Dated May 7, 2021.

Marsha J. Pechman
United States District Judge